IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIEANNE BALACH, | ) |
|       Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) |
|       Defendant. | ) |

## COMPLAINT

Julieanne Balach ("Plaintiff" or "Ms. Balach") brings this action against Life Insurance Company of North America ("Defendant" or "LINA") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. She seeks appropriate remedies as a result of Defendant's termination of long-term disability ("LTD") benefits under the HealthCare Benefits Trust on behalf of the University of Pittsburgh Medical Center (the "Plan"), sponsored by her employer University of Pittsburgh Medical Center (UPMC) and insured by LINA under Policy No. LK-980068.

### I.  PARTIES

1.      Ms. Balach is an adult individual who at all times relevant to the facts set forth in this Complaint was and is currently a resident of Washington County, Pennsylvania, and resides in this District.

2.      Defendant LINA is an insurance company and is the underwriting company for the Plan, and during times relevant to this Complaint transacted business in the Commonwealth of Pennsylvania at 1601 Chestnut Street, Philadelphia, PA 19192.  LINA is the claim fiduciary and both administers and pays benefits under the Plan.

3. The Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and UPMC is the sponsor of the Plan.

4. Joinder of the Plan as a defendant is not necessary as the Plan was fully insured and the Court can accord complete relief among the existing parties.

## II.  JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e) and (f) and 28 U.S.C. § 1331.

## III.  FACTUAL AVERMENTS

6. Ms. Balach, who is now 54 years old, has a Diploma of Nursing and is a Registered Nurse, has been working for UPMC or its predecessors since 1991.

7. As of 1999, she worked in the pediatric intensive care unit as a clinical coordinator, responsible for patient care and management of other medical staff.

8. As a UPMC employee, Ms. Balach is eligible for benefits under the Plan.

9. LTD benefits in the amount of 60% of an Employee's covered Earnings are payable under the Plan to an Employee who meats the definition of disability after a 180 day elimination period.

10. Under the Plan:

An Employee is Disabled if, solely because of Injury or Sickness, he or she is:

1. unable to perform the material duties of his or her Regular Occupation; and
2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

\*\*\*

After payment of Disability benefits for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness he or she is unable to perform the material duties of any gainful occupation for which he or she is reasonably fitted by education, training or experience.  Gainful occupation means an occupation

2

that is or can be expected to provide the employee with an income within 12 months of return to work that exceeds 80% of his or her Indexed Earnings if working or not working.

11. The Plan provides a return to work incentive, paying partial benefits to a disabled Employee who returns to work during the first 24 months that disability benefits are payable. After disability benefits are payable for 24 months," the monthly benefit payable is the Gross Disability Benefit reduced by Other Income Benefits and 50% of Disability Earnings.

12. On April 26, 2013, on her way to work, Ms. Balach was "rear-ended" on I-376. Despite a headache, dizziness and neck pain, she proceeded to work. When she continued to throw up after the accident, she sought treatment at the St. Clair Hospital emergency department and underwent X-rays and a CT scan of the head. She was prescribed Flexeril and referred to the UPMC Concussion Clinic for follow up.

13. At the UPMC Concussion Clinic, she was evaluated by Dr. Erin Reynolds for a cerebral concussion. Dr. Reynolds indicated that Ms. Balach presented with severe symptoms and vestibular and ocular dysfunction. She was referred to vestibular therapy, physical therapy and psychotherapy.

14. Despite her physical symptoms, which included not only headaches and dizziness, but also sharp stabbing pain, nausea and fogginess, Ms. Balach continued to work 60 hours per week. She also engaged in vestibular therapy and vision therapy, but had difficulty performing at work.

15. Finally, by the summer of 2013, she was having difficulty maintaining her work schedule given her post-concussion symptoms, and she took a lump sum retirement, rather than go out on short term disability.

16. Ms. Balach returned to work in September 2013, but continued treatment at the Concussion Clinic. Despite treatment, her test scores and symptoms continued to get worse.

17. An evaluation on October 28, 2013 by Jonathan E. French, Psy.D., who took over Ms. Balach's care from Dr. Reynolds, included neurocognitive testing and revealed scores below premorbid expectations. Dr. French tested Ms. Balach via a computerized neurocognitive test called ImPACT, and concluded that Ms. Balach suffered difficulties from mild traumatic brain injury that she suffered as a result of the motor vehicle accident, despite engaging in appropriate therapies. Nonetheless, Ms. Balach continued to work, because short term disability would have been only a percentage of a 40 hour per week pay period and well below her earnings.

18. Ms. Balach underwent an evaluation by Dr. French on December 2, 2013, who found that despite therapy she showed no significant improvement in her symptoms, which also included cognitive difficulties. Her ImPACT data remained below premorbid expectations as well as impaired vestibular screening. At that evaluation, Dr. French removed Ms. Balach from work because she is in a patient care setting and her cognition and symptoms could negatively impact her ability to provide appropriate care as well as prolonging her recovery.

19. Ms. Balach was forced to stop working in December 2013 and she was paid short term disability for the maximum period for that benefit. In June 2014, after six months, LINA approved LTD benefits.

20. Ms. Balach continued to undergo regular follow-up evaluations with Dr. French through June 2014. She continued to have physical symptoms of headaches, dizziness, visual problems, cognitive issues including fogginess, memory problems, focusing issues and sleep difficulties. Neurocognitive testing and vestibular screening continued to be abnormal.

21. However, since she began to experience positive results of therapy and her symptoms were beginning to decrease, Dr. French recommended a transition back to work, by part time light duty non-patient care employment with the goal to gradually increase.

22. On July 3, 2014, Ms. Balach took a part time, non-clinical position in the neurology clinic, given her ongoing balance issues and other post-concussion symptoms through the UPMC return to work program. While her rate of pay remained the same as that in the PICU, she worked only 20 hours per week.

23. Ms. Balach continued to undergo regular follow-up evaluations with Dr. French and by December 2014 was transitioned back to a light duty non-patient care job that was part time. She was able to tolerate her job, but reported physical symptoms, cognitive difficulties and sleep disturbances. She continued to seek treatment for nausea, balance issues and dizziness and neck pain.

24. In January 2015, the return to work program ended, and UPMC gave her the option of returning to her previous position in the PICU or to find a new job. Although her symptoms were ongoing, Dr. French believed she was continuing to make progress, and he placed her back to her position in the PICU, part time, so long as she was monitored by another nurse. Thus, Ms. Balach worked at her own occupation in the PICU part time, but was closely monitored by another nurse, given the concerns about whether she had recover sufficiently to be able to perform direct patient care.

25. By March 2015, at the end of the monitoring period, UPMC questioned whether Ms. Balach could perform a job involving direct patient care as required, and it was concluded that she could not. Dr. French recommended changing her work schedule, and Ms. Balach was

transferred to a part time patient flow coordinator job for 20 hours per week – a position that did not involve direct patient care.

26. Dr. French restricted Ms. Balach to no more than 40 hours per pay (or 20 hours per week) at the bed flow coordinator position. He noted that these restrictions were part of medical care and treatment for her diagnosis to reduce symptoms and help promote optimal recovery.

27. Unfortunately, Dr. French never lifted these restrictions, and Ms. Balach remains in the patient flow coordinator job for only 20 hours per week to date.

28. In December 2015, even though Ms. Balach was working at her maximum capacity in another occupation not involving direct patient care, LINA began to review Ms. Balach's claim to determine whether she satisfied the "other gainful occupation" definition of disability that was triggered after 24 months of benefits, due to commence on June 2, 2016.

29. Meanwhile, in the spring of 2016, Ms. Balach received an arbitration award regarding her personal injury case against the driver of the vehicle that struck her in 2013. Through her personal injury attorney she reached a compromise regarding LINA's claim for an "overpayment," and the agreed upon amount was sent to LINA in a letter dated May 3, 2016.

30. After she reimbursed LINA, in a letter dated May 5, 2016 LINA terminated her claim as of June 2, 2016, based on its determination that Ms. Balach was not disabled from any occupation. LINA's determination ignored the fact that Ms. Balach was unable to work more than 20 hours per week and thus earning far less than 80% of her indexed pre-disability earnings.

31. In a letter dated May 16, 2016, Ms. Balach timely appealed LINA's termination of benefits.

32. The appeal noted that LINA misread Ms. Balach's medical records, particularly the notes of Dr. French, indicating that she could work a maximum of **40 hours per pay period**, or 20 hours per week.

33. The appeal also included: Dr. French's treatment notes from 10/28/13 to 9/23/15; his narrative reports dated May 21, 2015, June 19, 2015, and October 1, 2015; Dr. French's deposition transcript; and Dr. Franz's deposition transcript.

34. After receiving Ms. Balach's appeal, LINA sought extensions of time to render a decision without stating any special circumstances as required under 29 CFR § 2560.503.1(i) for an extension beyond 60 days to make a decision.

35. Even though Ms. Balach was represented by counsel and LINA knew that she was working 20 hours per week, LINA contacted her by letter dated June 17, 2016 requesting that she contact them to discuss the appeal and to provide information regarding Social Security Disability benefits.

36. In a letter dated October 18, 2016, LINA denied the appeal.

37. The October 18, 2016 letter ignored the regular ImPACT testing of Dr. French, and the fact that she was working to her maximum capacity, but could only work 20 hours per week, thus was unable to earn more than half of her Indexed Earning, thus entitling her to partial benefits under the "other gainful occupation."

38. The October 18, 2016 letter violated 29 C.F.R. § 2560.503-1(h)(4) that requires that, before a determination on review, a claimant be provided any new or additional evidence relied upon by the insurer making the benefit determination in sufficient advance on the date on which the decision must be made to give the claimant a reasonable opportunity to respond to that new or additional evidence.

39. Due to the foregoing violations of the full and fair review requirements of 29 U.S.C. § 1133 and the claims regulations thereunder, Ms. Balach is entitled to a *de novo* review of LINA's decision, even if LINA had reserved discretionary authority, and any reports of medical consultants who reviewed her records should be given no weight.

40. All administrative remedies have been exhausted.

## IV. CLAIMS

### COUNT I—DENIAL OF LTD PLAN BENEFITS

41. The foregoing paragraphs are incorporated herein by reference as if set forth at length.

42. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff may bring an action to recover benefits due her under the terms of the Plan, to enforce her rights under the terms of the Plan, or to clarify her rights to future benefits under the terms of the Plan.

43. Notwithstanding that Ms. Balach conclusively demonstrated that she remains disabled under the Plan at all relevant times, LINA wrongfully terminated her benefits.

44. LINA violated the full and fair review provisions of ERISA §503, 29 U.S.C. §1133, and the Department of Labor regulations thereunder, 29 C.F.R. 2560.503-1(h), in that, *inter alia*, it failed to provide for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination, refused to consider additional information submitted by Plaintiff, it failed to make a decision within the time frame set forth in the DOL regulations or to state any special circumstances that required an extension, and failed to comply with 29 C.F.R. § 2560.503-1(h)(4), requiring that before a determination on review a claimant be provided any new or additional evidence relied

upon by the insurer making the benefit determination in sufficient advance on the date on which the decision must be made to give the claimant a reasonable opportunity to respond to that new or additional evidence.

45. LINA violated the manner and content of the notification of benefit determination provisions of ERISA §503, 29 U.S.C. §1133, and the Department of Labor regulations thereunder, 29 C.F.R. 2560.603-1(g) in that, *inter alia*, even though Plaintiff provided all of the information LINA claimed it needed in order for her to perfect her claim, it failed to consider that information in denying her appeal.

**COUNT II—CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER ERISA § 502(a)(3)**

46. The foregoing paragraphs are incorporated herein by reference as if set forth at length.

47. In the alternative, Plaintiff brings this claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits a participant to bring an action to enjoin any act or practice which violates ERISA or the terms of the Plan or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the Plan.

48. In terminating benefits under the Plan, LINA, acting as a fiduciary in the administration of Ms. Balach's claim, failed adequately to consider the facts and circumstances regarding her benefit claims, failed adequately to investigate the facts supporting her claim, and made material misrepresentations and omissions in terminating benefits.

49. ERISA §503, 29 U.S.C.§1133 requires that every employee benefit plan must:

    i. Provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

    ii. Afford a reasonable opportunity to any participant whose claim for

>benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

50. LINA violated ERISA §503, 29 U.S.C. §1133, and 29 C.F.R. 2560.503-1, the Department of Labor regulations thereunder, and failed to provide a full and fair review by the appropriate named fiduciary.

51. LINA breached its fiduciary duties under ERISA §404, 29 U.S.C. §1104, insofar it failed to discharge its duties with respect to the LTD policy solely in the interest of Ms. Balach, a participant, and for the exclusive purpose of providing benefits to participants and to act in accordance with the documents and instruments governing the plan.

52. LINA further breached its duty to Ms. Balach, as well as other participants, by: establishing a claims process in which its claims personnel automatically accept the opinions of LINA's paid medical reviewers and disregard the information and diagnoses of the claimant's treating physicians; establishing a claims process in which its claims personnel do not seek to reach an accurate decision, but instead only seek to render a decision that appears reasonable on the surface; establishing a claims process in which LINA places its financial interests ahead of the participants and beneficiaries; and establishing a claims process in which LINA does not seek independent and unbiased medical opinions, but instead seeks opinions favorable to its own financial interests.

53. As a result of LINA's violations of ERISA, Ms. Balach suffered actual harm, as she was denied benefits to which she was entitled under the Plan, she incurred attorneys' fees and costs, and suffered other financial losses, including but not limited to the inability to pay her mortgage.

## V.  RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court:

(a) Grant judgment in Plaintiff's favor and against Defendant;

(b) Order that Defendant restore to Plaintiff benefits due her from June 2016 to the date of judgment, including interest thereon;

(c) Declare Plaintiff's rights under the terms of the Plan, and clarify her rights to future benefits under the terms of the Plan;

(d) Enjoin Defendants to provide a procedure for a full and fair review of adverse determinations under the Plan in accordance with 29 U.S.C. §1133;

(e) Enjoin Defendants to discharge their fiduciary duties in accordance with 29 U.S.C. §1104;

(f) Order restitution or surcharge to disgorge Defendants' unjust enrichment in wrongfully denying benefits and/or to make Plaintiff whole for losses, including but not limited to payment of her attorneys' fees caused by Defendants' violation of 29 U.S.C. §1133 and breach of fiduciary duty and recovery of other financial losses;

(g) Order that Defendants pay the costs of suit including Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. §1132(g); and

(h) Award all such other and further relief as this court deems just and proper.

Dated:  July 27, 2017                                   Respectfully submitted,


    s/ Tybe A. Brett
Tybe A. Brett
PA I.D. 30064
tbrett@fdpklaw.com

Ruairi McDonnell, Esquire
PA I.D. 316998
rmcdonnell@fdpklaw.com

FEINSTEIN DOYLE PAYNE
  &amp; KRAVEC, LLC
429 Fourth Avenue, Suite 1300
Pittsburgh, PA 15219
(412) 281-8400 (Tel)
(412) 281-1007 (Fax)

*Attorneys for Plaintiff*